### EDWARD C. ALLEN vs. COMMERCIAL INSURANCE COMPANY IN NANTUCKET.
### PHILIP H. FOLGER, 2d. vs. SAME.

When a vessel arrives at her port of destination damaged by perils insured against to an amount less than half her valuation in the policy, deducting from the requisite repairs one third new for old, and is sold by the master, in the presence of the owners, because of the impossibility of obtaining the funds necessary to repair her, the owners are not entitled to abandon her to the underwriters, and recover as for a total loss.

In an action on a policy of insurance on a vessel, which has been sold at her port of destination by the master, solely because of his inability to obtain funds to repair the damage occasioned to the vessel by perils insured against, evidence that it would have been dangerous and impracticable to repair the vessel at that port, is immaterial, and therefore inadmissible.

It seems, that an abandonment of a vessel to the underwriters, without discharging the lien thereon, created by a bottomry bond, for necessary recruits, is invalid, if the owners had an opportunity to discharge such lien.

ACTIONS OF CONTRACT to recover as for a total loss upon two policies of insurance, whereby the defendants caused each of the plaintiffs to be insured $3,750 upon the brig Belfast, valued in the policies at $10,000, from San Francisco to Panama, and thence to Valparaiso. Each of these policies contains an agreement "that the insured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay under an adjustment, as of a partial loss, shall exceed half the amount insured."

The two cases were tried together before *Merrick*, J. at Nantucket. The evidence was that the brig encountered boisterous, severe and tempestuous weather, on her voyage from Panama to Valparaiso, whereby she was greatly damaged in her hull, spars and sails; that she arrived at the last named port on the 2d of August 1851, in a very leaky, disabled, unseaworthy and apparently unmanageable condition; that on the next day the master of the brig entered his protest before the consul of the United States, and at the same time, on account of the disabled condition of the brig in consequence of the damage she had sustained, caused and procured a survey of her to be had and made. The surveyors reported that the probable cost of repairing the brig would be from five to six thousand dollars; the items of their " approximate estimate " amounting in the whole to the sum of $5,248; and they recommended that the brig should be sold with the least possible delay, as being best for the interest of all parties concerned. The master therefore gave written notice to the consul of his intention to sell the brig; which sale was afterwards effected at public auction on the 28th of said August. On the 13th of November following, notice was given to the defendants by the plaintiffs of their intention to abandon their interest in the brig, and make claim against them as for a total loss. The plaintiffs introduced the deposition of George H. Brock the master of the brig, who testified, among other things, as to the cause and effect of the damage done to the brig; that she was owned one eighth by himself and seven eighths by each of the plaintiffs, both of whom were at Valparaiso on her arrival there, and remained at that port until after the sale; (at which they were present, as appeared by other testimony;) that he made every effort, but found it impossible to raise funds to repair the brig sufficiently to enable her to proceed to sea; that he acted on his own responsibility as master in abandoning the brig and making sale of her at Valparaiso; that the owners gave him no advice, and made to him no suggestion on that subject; and that the brig was sold solely because he could not get the funds to repair her.

It was agreed by the parties that the master, while he was a*

Panama during the voyage insured, borrowed $500 to pay necessary recruits, and gave a bottomry bond on the brig therefor; and the plaintiffs offered no evidence to show that the money so borrowed had been paid, or that said bond did not continue in full force, when the plaintiffs gave notice to the defendants of their intention to abandon; but the plaintiff Folger, whose answers to interrogatories filed by the defendants were read to the jury as evidence, without objection, testified that he did not think that the bond had ever been paid.

The defendants admitted the due execution of the policies; that the brig was seaworthy at the inception of the risk, and at the commencement of the voyage from San Francisco; that she sustained damage from the perils insured against; and they produced no evidence to contradict the statement relative thereto contained in the protest and in the deposition of the master. And they further admitted, that neither the master nor the owners possessed any means, whereby they could have raised the necessary funds at Valparaiso to make the repairs requisite to enable the brig to proceed to sea; and that the plaintiffs were entitled to recover as for a partial loss.

In addition to the foregoing facts, the plaintiffs proposed to introduce evidence, that the harbor at Valparaiso is an open roadstead, wherein vessels are exposed to northers of great severity, rendering it insecure to lie at anchor there from March to October, with no facilities to heave out a vessel and repair her bottom; that it was wholly impracticable to repair their brig there at that season of the year, and that she could not have been put upon the beach without a moral certainty of her destruction. This evidence, being objected to, was rejected as immaterial.

The cases were reserved, upon the foregoing report, for the consideration of the full court, with the agreement that if the court should be of opinion that the plaintiffs were entitled to recover as for a total loss, judgment should be rendered for the plaintiff in each action for $3,750, with interest, deducting what the defendants might have a right to claim for salvage; but if they were entitled to recover only for a partial loss, an

assessor should be appointed by the court to ascertain and assess the damages; unless the court should determine that the evidence offered by the plaintiff, which was rejected, ought to have been admitted, in which case a new trial should be granted.

*T. G. Coffin*, for the plaintiffs.

*T. D. Eliot*, for the defendants.

THOMAS, J. The question raised upon the report is, whether the plaintiffs can recover for a total loss, the defendants conceding that they are liable for a partial one. It is plain there was not an absolute total loss. And we think the claim for a constructive total loss cannot be maintained. These policies contain the provision now so common in the policies made in this commonwealth, "that the insured shall not have a right to abandon the vessel for the amount of damage merely, unless the amount which the insured would be liable to pay, upon adjustment as for a partial loss, shall exceed half the amount insured."

It is a general rule in this country, that if a ship is damaged to more than half the value by any peril insured against, the assured may abandon, and recover for a total loss. Though a different rule is adopted in England, and this may perhaps be regarded as a departure from the original economy of insurance, which was indemnity to the assured, it has the advantage of affording a fixed and definite standard, and is too well settled to be the subject of controversy. In this estimate the valuation in the policy is conclusive. Mr. Phillips, in his excellent treatise on insurance, supposes the weight of the authorities to be in favor of taking the actual value of the ship, when repaired, unless it be otherwise stipulated in the policy. 2 Phil. Ins. (3d ed.) § 1539. But in this commonwealth, and especially in policies containing the clause before recited, the question must be deemed to be at rest. *Deblois* v. *Ocean Ins. Co.* 16 Pick. 303. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 467. *Hall* v. *Ocean Ins. Co.* 21 Pick. 472. And in reviewing the grounds on which these decisions are based, we see no reason to question their soundness.

It is equally well settled in this commonwealth, that there must be a deduction of one third new for old. See the cases before cited; and *Sewall* v. *United States Ins. Co.* 11 Pick. 90; *Winn* v. *Columbian Ins. Co.* 12 Pick. 279; and *Reynolds* v. *Ocean Ins. Co.* 22 Pick. 191.

It needs but arithmetic to determine, that, upon the application of these rules, the plaintiffs could not abandon and claim for a total loss, upon the amount of damage merely.

But the right to abandon and claim for a total loss, existing in cases of injury to an amount greater than half the value of the ship, is not restricted to them. If this vessel had been in a port of necessity, in the condition described in the report, and the master had found it impossible to obtain the requisite funds for her repair by bottomry or otherwise, or to consult the owners, a sale might have been justified; and upon abandonment, no lien or incumbrance having been created to deprive the underwriter of the rights which it is the object of an abandonment to secure, a total loss might have been claimed, though the cost of repair would have been less than fifty per cent.

But the brig had reached her port of destination; her voyage, the voyage covered by the policy, was not broken up; the owners were present, and might have been consulted; and though the master, when the owner is not present, and cannot be consulted, may allege the impossibility of raising funds as a reason for selling, it is otherwise if the owner is present, and the loss is less than half the value. 2 Phil. Ins. (3d ed.) §§ 1533, 1578. *Bryant* v. *Commonwealth Ins. Co.* 13 Pick. 552. *Peirce* v. *Ocean Ins. Co.* 18 Pick. 83. Marsh. Ins. (3d ed.) 589. *American Ins. Co.* v. *Ogden,* 20 Wend. 287. To say that when a vessel had reached her port of destination, and the owners were present, and she was damaged to an amount less than half her value, the master could sell from inability to get funds for her repair; and that on such sale an abandonment and claim for a total loss could be made; would be to extend without reason or authority the power of the master, and the liability of the underwriter. The power of the master to sell grows out of the necessities of his condition, and is to be limited by them. The liability of

the underwriter is measured by the same rule which defines and limits the power of the master.

The sole ground of sale and abandonment in this case was the inability to procure funds for repairs. If there were others, the plaintiffs cannot now avail themselves of them. It is not open to them to show that causes existed other than those upon which the sale and abandonment were in fact made. 2 Phil. Ins. (3d ed.) § 1684. The evidence offered in relation to the harbor of Valparaiso, the want of facilities for repair at that port, and the danger of putting the brig on the beach, was therefore immaterial; as the report of the presiding judge and the deposition of the master show that the sole ground of sale was the inability of the master to get funds for repair.

This brig was bottomried for necessary recruits; that lien was not discharged before the abandonment; and it may well be doubted, though it is not necessary to determine this point, those before stated being conclusive, whether the plaintiffs could make a valid abandonment before discharging the lien so created. 2 Phil. Ins. (3d ed.) § 1554. *Depau* v. *Ocean Ins. Co.* 5 Cow. 63. *Gordon* v. *Massachusetts F. & M. Ins. Co.* 2 Pick. 249. 2 Arn. Ins. 1161.

And whether this abandonment was seasonable, it is not necessary to decide, the point not having been argued by the counsel, and the want of cause for abandonment being decisive as to the plaintiffs' claims.

*Cases to be sent to an assessor to assess the damages as for a partial loss.*